**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Zebue A. TURNER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 15, 2000.
Filed March 9, 2001.

Karl Turner, Public Defender, Philadelphia, for appellant.

Jennifer Slawek, Asst. Dist. Atty., Philadelphia, for the Com.

Before McEWEN, President Judge, DEL SOLE, KELLY, POPOVICH, JOHNSON, JOYCE, MUSMANNO, ORIE MELVIN, and LALLY–GREEN, JJ.

JOHNSON, J.:

¶ 1 In this appeal, we re-examine the meaning of "custodial interrogation" as it relates to an inebriated suspect being placed involuntarily in a police car and subsequently asked incriminating questions without being given *Miranda* warnings. We conclude that a suspect cannot be questioned under these circumstances without the benefit of having been given *Miranda* warnings and, therefore, any incriminating statements one makes under these conditions must be suppressed.

¶ 2 Zebue Turner appeals from the trial court's order denying his Petition for

Writ of Certiorari. Turner claims that the trial court erred in affirming the Philadelphia Municipal Court's decision not to suppress Turner's statement made in response to police questioning while he was seated in a police car, but not under arrest. Turner contends that his statement resulted from an illegal custodial interrogation in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After reviewing the facts of this case, we conclude that the combination of uniformed police officers placing a suspect in a police car for an unknown amount of time and subsequently asking him potentially incriminating questions rises to the level of a custodial interrogation and, therefore, the police must provide *Miranda* warnings before questioning him. Accordingly, we conclude that the trial court erred in denying Turner's Petition for Certiorari based on its review of the municipal court's denial of Turner's motion for suppression. Accordingly, we reverse and remand.

¶ 3 On October 18, 1998, Police Officer Gabriel Torres responded in uniform to a radio call regarding an automobile accident. Upon arriving at the scene, Torres observed a white vehicle that apparently had struck a parked vehicle. Turner was leaning against the white vehicle, unsteady and barely able to stand. Turner appeared to be falling asleep and failed to respond to Torres's questions. Torres did not smell alcohol on Turner's breath. Torres placed Turner in the back of his police car. In compliance with his police department's policy regarding suspected DUIs, Torres radioed for a supervisor to come to the scene. Sergeant Cassidy arrived on the scene, also in uniform. After discussing the situation with Torres, Cassidy opened the door of Torres's police car, leaned in, and asked Turner if he had taken any narcotics. Cassidy did not apprise Turner of his rights under *Miranda*. Turner re-

sponded that he had taken cough syrup and several pills. Subsequently, the officers arrested Turner. However, Turner refused to consent to a blood test. Thereafter, the Commonwealth charged Turner with Driving Under the Influence. *See* 75 Pa.C.S. § 3731. Turner moved to suppress his statement to Cassidy, asserting that his detention and questioning by the officers violated his rights under the Fifth Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution. Municipal Court held a hearing on Turner's oral motion, and subsequently denied the motion. After a trial, the Municipal Court convicted Turner of Driving Under the Influence. The court sentenced Turner to not less than 48 hours nor more than one year in county prison, plus fines and costs. Turner filed a Petition for Writ of Certiorari, which the Philadelphia Court of Common Pleas denied. Turner filed this appeal.

¶ 4 Turner presents us with the issue of whether the trial court erred in refusing to suppress the conversation between himself and Cassidy as the product of a custodial interrogation. Our standard of review for an appeal from a denial of a motion to suppress is as follows:

In an appeal from the denial of a motion to suppress[,] our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the [evidence supports the factual findings of the suppression court], we may reverse only if there is an error in the legal conclusions drawn from those factual findings. As a re-

viewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied. *Commonwealth v. Hayward,* 756 A.2d 23, 26 (Pa.Super.2000) (citations omitted). After review of the record, we conclude that the facts of this case are not in dispute. Therefore, we will review the court's decision to determine whether the court's legal conclusions are in error.

¶ 5 In the section of the trial court's opinion entitled "UNCONTRADICTED FACTS," the court states that Torres placed Turner in the back of his police car in order to ensure Turner's safety because Turner had dozed off again and almost fell against him. The trial court also found that "[a]t that point, [Turner] was not under arrest, although he was not free to leave." Additionally, the trial court found that, after arriving at the scene, Cassidy opened the door of the police car, leaned in and asked Turner if he had taken any narcotics, upon which Turner replied that he had ingested cough syrup and several pills. Without further explanation, the trial court determined that Turner was not subject to a "custodial interrogation" at the time he made the incriminating statements. Therefore, the court concluded that there was no requirement of *Miranda* warnings on the facts before it, and consequently, it denied Turner's petition.

▇▇▇▇ ¶ 6 Turner argues that the combination of his confinement to the police car by Torres and his subjection to questioning by Cassidy as to whether he had taken any narcotics constituted a custodial interrogation. There are two separate requirements, custody and interrogation, that have to be found in order for *Miranda* to apply. *See Commonwealth v. Whitehead,* 427 Pa.Super. 362, 629 A.2d 142, 144 (1993). "[P]olice detentions in

Pennsylvania become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest." *Commonwealth v. Ellis,* 379 Pa.Super. 337, 549 A.2d 1323, 1332 (1988) (citing *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)). "Interrogation is police conduct calculated to, expected to or likely to evoke admission." *Commonwealth v. Johnson,* 373 Pa.Super. 312, 541 A.2d 332, 336 (1988) (citation and quotations omitted). The overlying test to determine whether a person is being subjected to a custodial interrogation necessitating *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. *See Commonwealth v. Chacko,* 500 Pa. 571, 459 A.2d 311, 314 (1983). "The standard for determining whether police have initiated a custodial interrogation or an arrest is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized." *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078, 1085–86 (1993). The factors that the court considers to determine whether there has been a custodial interrogation include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. *See Commonwealth v. Peters,* 434 Pa.Super. 268, 642 A.2d 1126, 1130 (1994) *(en banc).*

¶ 7 Police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to become the functional equivalent of an arrest. *See Ellis,* 549 A.2d at 1332. "Arrest is an act that indicates an intention to take a person into custody or that subjects the person to the will and control of the person making the arrest." *Commonwealth v. Gwynn,* 555 Pa. 86, 723 A.2d 143, 148 (1998). We will now review the facts of the instant case to determine whether those facts support the trial court's legal conclusion that the events that occurred did not constitute a custodial interrogation.

¶ 8 Torres testified that he "put" Turner into his police car, not that he asked Turner if he wanted to sit in the car or offered the back seat as a place to rest. Turner sat in the car while Torres radioed Cassidy and waited for him to arrive. Torres also testified that Cassidy had to open the car door in order to speak to Turner, which suggests that Torres closed the door after he put Turner inside the car. There is no suggestion in the record that Turner closed the door himself. Based on the totality of the circumstances, we conclude that Turner was physically deprived of his freedom to a level that was the functional equivalent of being arrested and, therefore, was in custody. After review of the evidence, we are unable to conclude that the facts support the trial court's conclusion that Turner was not in custody at the time of the questioning.

¶ 9 Next, we look at the issue of interrogation. The United States Supreme Court's intent in *Miranda* was to "spare the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government." *Pennsylvania v. Muniz,* 496 U.S. 582, 596, 110 S.Ct. 2638,

110 L.Ed.2d 528 (1990). An interrogation for the purposes of *Miranda* "refers not only to express questioning, but also to any words or actions on the part of police (other than normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Whitehead,* 629 A.2d at 145. Cassidy, by opening the car door, leaning into the car and questioning Turner regarding whether he had taken any narcotics, was eliciting information. As a trained officer who observed Turner's physical condition, Cassidy should have known that Turner's response might yield an incriminating statement that would lead to Turner's arrest for driving under the influence. *See id.* Turner did not volunteer that he had taken cough syrup and several pills; a uniformed officer specifically questioned him while he was confined to the police car where another uniformed officer had placed him. We conclude that the combination of Torres putting Turner involuntarily into the police car and Cassidy questioning Turner regarding his drug use while standing in the police car doorway created a custodial interrogation.

¶ 10 The Commonwealth argues that the police officers' treatment of Turner did not rise to the level of "custody" for the purposes of finding a custodial interrogation. We conclude that because the Commonwealth does not discuss the interrogation element of custodial interrogation, it concedes that Sergeant Cassidy's question to Turner did constitute an interrogation. In support of its argument against finding custody, the Commonwealth cites *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988); *Commonwealth v. White,* 358 Pa.Super. 120, 516 A.2d 1211 (1986); *Commonwealth v. Ellis,* 379 Pa.Su-

per. 337, 549 A.2d 1323 (1998) and *Commonwealth v. Gwynn*, 555 Pa. 86, 723 A.2d 143 (1998). We find these cases readily distinguishable.

¶ 11 The Commonwealth asserts that a suspect is not in custody when a police officer makes a traffic stop and asks the driver basic investigative questions. However, such encounters are limited to "ordinary" traffic stops. *See Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (likening an ordinary traffic stop to an investigative detention). *See also Pennsylvania v. Bruder*, 488 U.S. 9, 10, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988) (concluding that an ordinary traffic stop during which a police officer asks a driver a modest number of questions and requests him to perform a simple balancing test at a location visible to passing motorists did not involve "custody" for purposes of *Miranda* rule). A traffic stop during which the detainee is involuntarily placed in the back of a police car with the door closed certainly is not an "ordinary" traffic stop. In addition, "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him "in custody" for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Berkemer*, 468 U.S. at 440, 104 S.Ct. 3138. As we have already determined, the treatment afforded Turner by Torres and Cassidy rose to the level of being "in custody," and, therefore, necessitated the recitation of *Miranda* warnings before interrogating him.

¶ 12 The Commonwealth argues that the fact that a suspect is placed in a police car and may not be free to leave does not mean that he is restrained to the degree associated with formal arrest. The Commonwealth supports this argument by citing *Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211 (1986), as authority for its conclusion that Turner was not in custody at the time of the questioning. However, *White* addresses the issue of investigative detention, not custodial interrogation. *See White*, 516 A.2d at 1212. Therefore, we do not find *White* controlling. The Commonwealth also cites *Commonwealth v. Gwynn*, 555 Pa. 86, 723 A.2d 143 (1998), as support for the same proposition. In *Gwynn*, our Supreme Court determined that Gwynn's statements were admissible based on reasons that had nothing to do with a custodial interrogation; the Court concluded that Gywnn's first statement could not be suppressed based on its content and that his second statement could not be suppressed because it was made after the officers gave him *Miranda* warnings. *See Gwynn*, 723 A.2d at 149–50. Therefore, *Gwynn* also is inapplicable to the instant case.

¶ 13 Finally, the Commonwealth argues that the instant case is "virtually indistinguishable from [*Commonwealth v.*] *Ellis*," 379 Pa.Super. 337, 549 A.2d 1323 (1998). In *Commonwealth v. Ellis*, the defendant had been taken to the hospital for treatment for his second-degree burns caused by a fire that he was eventually convicted of starting. Ellis motioned to suppress statements he had made to a police officer while at the hospital as having been the product of a custodial interrogation in violation of *Miranda*. Our Court concluded that Ellis was questioned in an open area of a hospital in view of hospital personnel. The police questioned Ellis briefly regarding the occurrence that caused Ellis's injuries. In addition, the police did not arrest Ellis before, during or after the questioning. The Commonwealth points out that in *Ellis*, our Court concluded that "[t]he only restraints upon appellant's freedom were those caused by his medical condition, as opposed to any action on the part of the police," and suggests that Ellis's

physical debility precluded suppression. *See Ellis,* 549 A.2d at 1333. The Commonwealth asserts that the situation in the instant case is the same as in *Ellis;* it argues that the only restraint on Turner's freedom stemmed from his own inebriation. Therefore, the Commonwealth urges that we should conclude that Turner's statements too should not be suppressed.

¶ 14 The Commonwealth misconstrues *Ellis.* We did not conclude that Ellis was not subjected to a custodial interrogation merely by reason of physical inability to leave. Rather, we reached our conclusion that the statements made were not subject to suppression on the fact that there was no behavior by the police that could have been construed as a custodial interrogation. *See Ellis,* 549 A.2d at 1333. Therefore, we cannot adopt the Commonwealth's suggested conclusion that there was no custodial interrogation because Turner was unable to leave the scene. We base our conclusions, as in *Ellis,* on the actions of the police officers. We conclude that the combination of placing Turner in the police car, shutting the door, leaving him there until Cassidy arrived, and Cassidy questioning him while blocking the doorway and leaning into the backseat with Torres behind him, compels the conclusion that Turner reasonably could have presumed that he was not free to leave. Contrary to the Commonwealth's argument, we conclude that the facts of *Ellis,* which describe a situation where there was insubstantial communication between the officer and the defendant prior to his becoming a suspect, further our conclusion that, in light of the behavior of the officers towards Turner, Turner was subject to a custodial interrogation. We conclude, accordingly, that because the officers did not issue *Miranda* warnings before questioning Turner, Turner's statement to Cassidy should have been suppressed.

¶ 15 Based on the totality of the circumstances, we conclude that Turner was the subject of a custodial interrogation and, therefore, should have been given his *Miranda* warnings before being questioned. Therefore, we conclude that the trial court erred in reaffirming the Municipal Court's conclusion that Turner's statement should not be suppressed based on a violation of *Miranda.* Accordingly, we reverse the trial court's denial of Turner's Petition for Writ of Certiorari.

¶ 16 Order **REVERSED.** Case **REMANDED** for further proceedings not inconsistent with this opinion.

¶ 17 LALLY–GREEN, J. joins the majority Opinion and files a Concurring Opinion in which KELLY, JOHNSON, JOYCE and MUSMANNO, JJ. have joined.

¶ 18 KELLY and MUSMANNO, JJ. also join in the majority Opinion.

LALLY–GREEN, J., concurring.

¶ 1 I concur in the Majority's Opinion. I write separately to further discuss the differences between the instant case and ordinary traffic stop cases. Before doing so, and given the fact-specific nature of our inquiry, it is important to recite the facts of the case in detail.

¶ 2 Officer Torres testified at the suppression hearing as follows. At approximately 8:47 p.m. on October 18, 1998, he arrived at the scene of an accident near 4815 N. 4th Street in Philadelphia. N.T., 4/15/99, at 5. Officer Torres saw the rear of Turner's car resting against a parked car. *Id.* at 6. Turner was dozing off and leaning against the driver's side of his car. *Id.* at 7. Officer Torres asked Turner if he was all right and whether he had a license. *Id.* Turner did not respond. *Id.* Turner then "dozed off again and almost went right into me and that's when I took him and

put him in the police vehicle." *Id.* at 8. Turner did not smell of alcohol. *Id.* at 9. At this point, Officer Torres suspected that Turner was driving under the influence of narcotics, and planned to investigate the case as such. *Id.* at 13. On the other hand, when Officer Torres was asked on redirect the reason for placing Turner in the vehicle, he responded: "he couldn't barely stand on his own, I didn't want him to get hurt on the highway." *Id.* at 17. The record does not reveal that either person said anything to the other when Officer Torres put Turner in the vehicle.

¶ 3 Pursuant to departmental policy, Officer Torres called his supervisor, Sergeant Cassidy, to the scene to continue the investigation. *Id.* at 14. Turner waited in the vehicle. The record does not reveal whether the rear doors of the police vehicle had interior handles, such that Turner could have attempted to leave. Nevertheless, when asked, "if [Turner] had gotten out of the car, you wouldn't have let him run off, right?" Officer Torres responded, "No, I wouldn't." *Id.* at 14.

¶ 4 The record does not reveal how long it took for Sergeant Cassidy to arrive at the scene. When he did, Officer Torres told Sergeant Cassidy about his observations. *Id.* at 15. Sergeant Cassidy then opened the rear passenger door of the patrol car, and asked questions to determine whether Turner was driving under the influence. *Id.* at 16. Specifically, Sergeant Cassidy asked Turner what he was taking. *Id.* at 8. Turner replied that he had taken cough syrup and several pills. *Id.* at 9. Officer Torres was standing beside Sergeant Cassidy during this questioning. *Id.* at 16. Thus, the record reveals that Turner was questioned while sitting in a police vehicle, with two uniformed officers standing in front of the only available exit.

¶ 5 The Commonwealth claims that the instant case is functionally indistinguishable from an ordinary traffic stop. During ordinary traffic stops, a motorist is not in "custody" for purpose of *Miranda* warnings and, therefore, any pre-custody/pre-arrest statements are admissible. *Pennsylvania v. Bruder,* 488 U.S. 9, 10, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988); *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

¶ 6 The *Berkemer* Court recognized that an ordinary traffic stop does curtail significantly the freedom of action of the motorist (and passengers) in the detained vehicle. *Berkemer,* 468 U.S. at 436, 104 S.Ct. 3138. The Court pointed out that the motorist, in most states, must stop when the police signal to stop and, once stopped, can not drive away without permission. *Id.* The Court identified two features of an ordinary traffic stop that mitigate the danger that a person questioned will be induced "to speak where he would not otherwise do so freely" or to feel "completely at the mercy of the police." *Id.* at 437–439, 104 S.Ct. 3138.

¶ 7 First, the detention of the motorist is "presumptively temporary and brief." *Id.* at 437, 104 S.Ct. 3138. The detention lasts a few minutes in order to permit the police to check the license and registration and to ask the motorist a few questions. *Id.* This differs from the "stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." *Id.* at 438, 104 S.Ct. 3138.

¶ 8 Second, the circumstances associated with the ordinary traffic stop are not such that the motorist feels completely at the mercy of the police. *Id.*

To be sure, the aura of authority surrounding an armed, uniformed officer and the knowledge that the officer has

some discretion in deciding whether to issue a citation, in combination, exert some pressure on the detainee to respond to questions. But other aspects of the situation substantially offset these forces. Perhaps most importantly, the typical traffic stop is public, at least to some degree.... This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse.... The fact that the detained motorist typically is confronted by only one or at most two policemen further mutes his sense of vulnerability.

*Id.* The *Berkemer* Court then analogized the ordinary traffic stop to a *Terry* stop rather than a formal arrest. *Id.* at 439–440, 104 S.Ct. 3138.

¶ 9 In *Bruder,* a police officer observed that Bruder was driving erratically and had ignored a red light. *Bruder,* 488 U.S. at 9, 109 S.Ct. 205. After stopping Bruder's vehicle, the officer smelled alcohol and saw Bruder stumbling. *Id.* The officer conducted field sobriety tests, including asking Bruder to recite the alphabet. *Id.* at 9–10, 109 S.Ct. 205. The officer also asked about alcohol. *Id.* at 10, 109 S.Ct. 205. Bruder said that he had been drinking. *Id.* When Bruder failed the sobriety test, the officer arrested him and gave him *Miranda* warnings. *Id.* The issue in *Bruder* was whether Bruder's pre-arrest statements should be suppressed as the result of custodial interrogation without *Miranda* warnings. The Supreme Court reaffirmed *Berkemer* and reannounced that the:

... noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not in custody for the purposes of *Miranda.* ... [A]lthough the stop was unquestionably a seizure within the meaning of the Fourth Amendment, such traffic stops typically are brief, unlike a prolonged station house interrogation. Second, the Court emphasized that traffic stops commonly occur in the public view, in an atmosphere far less police dominated than that surrounding the kinds of interrogation at issue in *Miranda* itself. The detained motorist's freedom of action was not curtailed to a degree associated with formal arrest. Accordingly, he was not entitled to a recitation of his constitutional rights prior to arrest and his roadside responses to questioning were admissible. [1]

---

[1] We did not announce an absolute rule for all motorist detentions, observing that lower courts must be vigilant that police do not delay formally arresting detained motorists, and subject them to sustained and intimidating interrogation at the scene of their initial detention.

*Bruder,* 488 U.S. at 10, 109 S.Ct. 205 (citations, internal quotations and ellipses omitted).

¶ 10 In Pennsylvania, our Supreme Court has followed the lead of the United States Supreme Court.[1] An ordinary traffic stop is not a custodial detention if the detention is consistent with the statutory obligation to stay at the scene and provide required information, and does not involve restraints associated with arrest such as prolonged detention. *Commonwealth v.*

---

1. Appellant contends that under Pennsylvania law, a person may be considered "in custody" under conditions which are less restrictive than those associated with an arrest. Appellant's Brief at 10 n. 2, *citing, Commonwealth v. Zogby,* 455 Pa.Super. 621, 689 A.2d 280

(1997). In *Commonwealth v. Busch,* 713 A.2d 97, 99 n. 5 (Pa.Super.1998) (*en banc* ), this Court rejected this proposition and held that the test for custody in Pennsylvania is whether the defendant is subjected to the functional equivalent of an arrest.

*Gonzalez,* 519 Pa. 116, 546 A.2d 26 (1988); *Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517 (1980).

¶ 11 In *Gonzalez,* police asked the defendant driver "what happened" at the scene of a fatal car accident. *Gonzalez,* 546 A.2d at 28. The officers noticed that Gonzalez was unsteady and swaying, that his eyes were watery and bloodshot, and that he smelled of alcohol. *Id.* He was then placed under arrest. *Id.* Our Supreme Court held that Gonzalez, a driver at a traffic stop, was not in "custody" because his freedom was restricted only to the extent of his statutory obligation to stay at the scene and provide required information, and that he was not subject to restraints associated with arrest. *Id.* at 29–30.

¶ 12 In *Meyer,* the police investigated an accident at 3:00 a.m. where the only two people at the scene were the defendant and the driver of a tractor-trailer. *Meyer,* 412 A.2d at 518. The police allowed the tractor-trailer driver to leave the scene, but placed Meyer in a police car for 30 minutes to wait for the state troopers to arrive. *Id.* When the troopers arrived, the defendant exited the patrol car and made an incriminating statement to the police. *Id.* at 519. The Court held that, because of the prolonged detention, Meyer was in custody and his incriminating statement was inadmissible because the police had

failed to give *Miranda* warnings. *Id.* at 521. The Court stated:

> [T]he test of custodial interrogation is whether the individual being interrogated reasonably believes his freedom of action is being restricted. And here, a 'reasonable belief that freedom of action has been restricted' surely existed. Corporal Baker expressly told [Meyer] he must wait at the scene. Once the driver of the tractor-trailer left, [Meyer] was the only person not a law-enforcement officer at the scene. Baker closely observed [Meyer] pending the arrival of the State Troopers. Part of that time [Meyer] was in a Carlisle police patrol car. State Police arrived and one of them, Trooper Stine, surveyed the scene and directed [Meyer] to produce an owner's card and driver's license.

*Id.* at 521–522 (citation omitted).[2]

¶ 13 In Pennsylvania, an ordinary traffic stop is not a custodial detention if it: (1) is consistent with the driver's statutory obligation to stay at the scene and provide required information; and (2) does not involve restraints associated with arrest. Traffic stops are consistent with the driver's statutory obligation if they are: temporary and brief but long enough to allow time for the police officer to complete his investigation, including a field sobriety test; and are conducted in the public's view.[3] We observe that, in Pennsylvania,

---

**2.** Interestingly, the *Bruder* Court acknowledged *Meyer* as an example of "an unusual" traffic stop case where *Miranda* warnings may be required because of the prolonged detention. *Bruder,* 488 U.S. at 11 n. 2, 109 S.Ct. 205.

**3.** *See, Commonwealth v. Proctor,* 441 Pa.Super. 176, 657 A.2d 8, 11–12, *appeal denied,* 542 Pa. 645, 666 A.2d 1054 (1995) (defendant-motorist not in custody when detained at an accident scene for a short time period to allow the police officer to complete his investigation and conduct a field sobriety test because defendant's freedom of movement was

not inhibited in any significant way); *Commonwealth v. Leib,* 403 Pa.Super. 223, 588 A.2d 922, 931 (1991) (statements of a defendant-motorist were not suppressed because his seizure was not custodial in that it was a temporary detention associated with ordinary traffic stops); *Commonwealth v. Sullivan,* 399 Pa.Super. 124, 581 A.2d 956, 958 (1990) (defendant-motorist was not in custody when subject to an ordinary traffic stop and not placed under arrest, forced to enter a police patrol car, subjected to coercion, or subject to prolonged questioning); *Commonwealth v. Haupt,* 389 Pa.Super. 614, 567 A.2d 1074,

a driver has a statutory duty to remain at the scene of an accident and to provide certain information. 75 Pa.C.S.A. §§ 3733, 3744–45; *Gonzalez,* 546 A.2d at 29–30.

¶ 14 Police restraints are comparable to those associated with "arrest" when, under the totality of the circumstances, the conditions and/or duration of the detention are so coercive as to be the functional equivalent of an arrest. *See, Commonwealth v. Ellis,* 379 Pa.Super. 337, 549 A.2d 1323, 1332 (1988). "An arrest is any act that indicates an intention to take a person into custody and subject him to the actual control and will of the person making the arrest." *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078, 1085 (1993). The standard for determining whether police have initiated interrogation during custody is an objective one, viewed under the totality of the circumstances, "with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized." *Id.* at 1085–1086. The factors that the court considers to determine whether the interrogation has taken place while the defendant is in custody include:

> ... the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far and why; whether re-

straints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

Majority Opinion at 973, *citing, Commonwealth v. Peters,* 434 Pa.Super. 268, 642 A.2d 1126, 1130 (1994) (*en banc* ).

¶ 15 With these principles and authorities in mind, the record reveals that the instant case began as an ordinary traffic stop. Officer Torres arrived at the scene of an accident and, while conducting his investigation, began to ask Turner questions. Turner was standing outside his vehicle. The record reflects that, under a totality of the circumstances, the situation was non-custodial. Officer Torres could question Turner without giving him *Miranda* warnings.

¶ 16 When Officer Torres placed Turner in the back seat of a police car, with closed doors, for an indeterminate amount of time and without a sufficient non-custodial reason, "custody" under our case law triggered. The record reveals that Officer Torres placed Turner in the back seat of the patrol car and shut the door. Nothing in the record suggests that Turner had any choice in the matter. He was neither free to leave the patrol car nor told he was free to leave the vehicle. His egress from

1080 (1989) (traffic stop was investigative detention because the basis for detention was a traffic violation, the stop endured approximately 15 to 20 minutes, the location was a public street, the defendant-motorist was not transported, no restraints were used and the police officer made no show, threat, or use of force); *Commonwealth v. Douglass,* 372 Pa.Super. 227, 539 A.2d 412 (1988) (two-hour detention held reasonable in traffic stop case involving a fatal car accident because police conducted prompt investigation and detention was not prolonged or without the defendant's consent). *See also, Commonwealth v. Toanone,* 381 Pa.Super. 336, 553 A.2d 998, 1003 (1989) (defendant-motorist not in custody

when questioned about educational background and requested to recite alphabet because motorist was not interrogated for unreasonably long period, forced to enter patrol car, or subjected to any form of undue coercion); *Commonwealth v. Anderl,* 329 Pa.Super. 69, 477 A.2d 1356, 1361 (1984) (defendant was not in custody where the officer asked questions while defendant was still in his car and where any limitation on defendant's movement was the result of the accident and not police action). *See generally, Commonwealth v. Mannion,* 725 A.2d 196, 202 n. 5 (Pa.Super.1999) (*en banc* ), where this Court overviewed most of the traffic stop cases discussed in this note.

the car was completely controlled by the police. His confinement was shielded from public view. He waited in the patrol car for an indeterminate amount of time.[4] Finally, when the car door was opened, the two uniformed officers blocked the door exit and began the questioning. Thus, when Officer Torres placed Turner in the back seat of the police car, with closed doors, for an indeterminate amount of time and without a sufficient non-custodial reason, this police action was the functional equivalent of an arrest because Turner was subject to the will and control of the police.

¶ 17 Since the confinement of Turner in the police car was beyond the type of investigative detention permitted by the traffic stop cases, I agree with the Majority that the facts of the instant case, taken as a whole, yield a conclusion that Turner was in custody while confined to the back seat of the patrol car. As such, *Miranda* warnings were required before the police could legitimately question Turner after Officer Torres placed Turner in the patrol car.

¶ 18 The Commonwealth argues that Turner was placed in the police vehicle for his own safety. Commonwealth's Brief at 4. The Commonwealth thus urges us to conclude that when a suspect is placed in a police vehicle for his or her own safety, the suspect is not "in custody." "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have under-

stood his situation." *Berkemer,* 468 U.S. at 442, 104 S.Ct. 3138; *see also, Commonwealth v. Busch,* 713 A.2d 97, 102 (Pa.Super.1998) (*en banc* ) ("an officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her 'freedom of action'"), *quoting, Stansbury v. California,* 511 U.S. 318, 325, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (*per curiam* ).

¶ 19 The record reflects that while Officer Torres said his motivation was Turner's safety, Officer Torres did not convey his motivation to Turner. Indeed, the record fails to reflect that either officer expressed to Turner any concern for Turner's safety at any time before interrogating him. Rather, the record reflects that Officer Torres placed Turner in the back seat of the police car to wait until Sergeant Cassidy arrived to continue the investigation. (N.T., 4/15/99, at 13–14, 16).

¶ 20 Consequently, Officer Torres' unarticulated concern for Turner's safety is not relevant to the question whether Turner was "in custody" while in the back seat of the patrol car. Rather, the relevant question is how a reasonable man in Turner's position would have understood his situation.[5] If Officer Torres had articulated his concern to Turner for Turner's safety (or his health) when he placed Turner in the

---

**4.** In this respect, the circumstances of the instant case were even more custodial than those in *Meyer* because Meyer was taken **out** of the patrol car before he was questioned.

**5.** The record reflects no evidence that Officer Torres was prevented from placing Turner in Turner's *own* vehicle. Some of the coercive

aspects of placing Turner in the police vehicle would have been minimized. Of course, in such a case, we would look at the totality of the circumstances to determine whether a suspect who is placed in the back seat of his own car is in "custody" at the time of interrogation.

closed patrol car, it is possible that Turner reasonably would have understood his situation not to be one of "custody." [6]

¶ 21 Police officers undoubtedly face difficult decisions when they encounter intoxicated or impaired drivers at the scene of accidents. Such drivers may be nearly asleep (as in Turner's case), or belligerent and threatening. In such cases, it may be necessary to place the driver in the back seat of a patrol car for safety purposes and/or investigative purposes. Nothing in this concurrence should suggest that the police lack the authority or the discretion to place suspects in ordinary traffic stop cases in the back of patrol cars. What is suggested is that, once the police place a suspect in the back seat of a patrol car, in circumstances like those of Turner's, the police either are: (1) to provide *Miranda* warnings before beginning *any* interrogation; or (2) to refrain from *any* interrogation.

¶ 22 For all of these reasons, I join in the Majority's Opinion.

¶ 23 KELLY, JOHNSON, JOYCE and MUSMANNO, JJ., have joined this concurring opinion.

---

**6.** Of course, it is equally likely that a reasonable person in the suspect's situation would nevertheless believe he or she is in custody.