**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SAMUEL ANDINO | : | |
| | : | |
| Appellant | : | No. 1541 EDA 2018 |

Appeal from the Judgment of Sentence May 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003625-2017

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 17, 2019**

Samuel Andino appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after he was convicted in a non-jury trial of various firearms charges.[1]  On appeal, Andino challenges the trial court's denial of his pre-trial motion to suppress, claiming that the police did not have reasonable suspicion to conduct a "pat-down" where Andino was not armed and dangerous and that the arresting officer did not have probable cause to subsequently conduct a search of his vehicle.  After careful review, we vacate Andino's judgment of sentence and reverse the order denying suppression.

---

[1] 18 Pa.C.S. §§ 6105(a)(1) (persons not to possess firearms); 6106(a)(1) (firearms not to be carried without license); 6108 (carrying firearms on public streets in Philadelphia); and 6106.1 (carrying loaded weapon).

---

*   Retired Senior Judge assigned to the Superior Court.

On the evening of April 10, 2017, Philadelphia Police Officers Sharrod Davis and Timothy Murphy were on routine patrol duty in their marked police cruiser near North Dover Street in Philadelphia, a high-drug/crime area. Officer Davis observed a Chevy Malibu, with a Pennsylvania license plate, double-parked on the 2800 block of Cecil B. Moore Avenue. The officers pulled their cruiser behind the Malibu; the driver of the vehicle, Andino, drove off, turning northbound onto the 1700 block of Dover Street without using turn signals. At that time, Officer Murphy activated the cruiser's overhead lights and sirens and followed Andino's vehicle, which had pulled over and parked on the sidewalk. Officer Davis conducted a motor vehicle check that revealed the Malibu's registration had been suspended. At that time, Officer Davis exited the cruiser and approached the Malibu. As he neared the Malibu's driver's side window, Officer Davis testified that he smelled an odor of burnt marijuana.[2] At that point, Officer Davis told Andino that he and his vehicle were going to be searched. Officer Davis then opened the car door and, as he attempted to pat down Andino, noticed Andino "kind of lean[] over towards the driver – the steering wheel." N.T. Suppression Hearing/Waiver Trial, 12/14/17, at 11. Officer Davis then put his hand on Andino, told him to move

_____

[2] Officer Murphy testified that he did not recall an odor of marijuana emanating from Andino's vehicle during the encounter. N.T. Suppression Hearing/Waiver Trial, 12/14/17, at 36.

back and patted down his right front pants pocket, recovering a firearm magazine that contained 15 live rounds. *Id.* at 11-12.

At that point, Officer Davis asked Andino to exit the vehicle, telling him that he needed to pat him down further because he was not able to reach all the way down Andino's pant legs while he was seated in the Malibu. Officer Davis then handed Andino over to his partner, Officer Murphy, telling him to perform a full pat-down on Andino. *Id.* at 14. When Officer Murphy conducted his pat-down of Andino, he recovered a black 9mm Glock handgun with an extended magazine loaded with 23 rounds from Andino's right leg. *Id.* At the same time Officer Murphy was patting down Andino, Officer Davis performed a search of the vehicle. *Id.* at 28. No contraband was uncovered during the search of the Malibu. *Id.* at 29.

Andino filed a pre-trial motion to suppress, arguing that the police lacked both reasonable suspicion to pat him down and probable cause to conduct, what amounted to, a search of his person. On December 14, 2017, the Honorable J. Scott O'Keefe denied the suppression motion, stating, "[A]fter reviewing my notes, I'm going to deny the motion to suppress."[3]

---

[3] We remind Judge O'Keefe that pursuant to Pa.R.Crim.P. 581(I), "[a]t the conclusion of the hearing, the judge **shall** enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought." Pa.R.Crim.P. 581(I) (emphasis added).

Immediately following the suppression ruling, Andino proceeded to a waiver trial where the parties incorporated all relevant testimony from the suppression hearing. After admitting exhibits, the parties rested and the court rendered its guilty verdict.

On April 25, 2018, the trial court sentenced[4] Andino to 3½-7 years' incarceration and two years of probation for his section 6106 conviction, with two separate concurrent terms of five years of probation for his section 6105 and section 6108 violations.[5] Andino filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He presents one issue for our consideration:

> Did not the lower court err in denying [Andino's] motion to suppress the physical evidence insofar as [Andino] was frisked without reasonable suspicion that he was armed and dangerous and assuming *arguendo* that a frisk was lawful under the circumstances, the police officer exceeded the scope of the frisk by performing an admitted search which required probable cause.[6]

Appellant's Brief, at 3.

In an appeal from the denial of a motion to suppress, our Court's role is to determine whether the record supports the suppression court's factual

---

[4] The trial court amended its sentence that originally imposed 4-8 years' imprisonment on the section 6106(a)(1) offense, a third-degree felony.

[5] No further penalty was imposed on Andino's section 6106.1 conviction.

[6] Andino does not contest the legal validity of the car stop where he committed a Motor Vehicle Code violation and the car's registration had been suspended due to a returned check. N.T. Suppression Hearing/Waiver Trial, 12/14/17, at 9.

findings and the legitimacy of the inferences and legal conclusions drawn from those findings. **Commonwealth v. Turner**, 772 A.2d 970 (Pa. Super. 2001). Moreover,

> [s]ince the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Bomar**, 826 A.2d 831, 842 (Pa. 2003).

Andino argues that neither officer had reasonable suspicion to frisk him or probable cause to search him where Andino was nothing but cooperative with the police and there was no evidence to support the claim that Andino's movement in the car was "out of the ordinary." Andino also claims that Officer Davis did not have "reasonable individualized suspicion" to justify a frisk for weapons where the officer's real motive in frisking Andino was to find marijuana. Finally, Andino claims that even if the frisk were justified, the scope of the pat-down well exceeded the permissible range under **Terry**,[7] which is "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." **Terry**, 392 U.S. at 26.[8]

---

[7] **Terry v. Ohio**, 392 U.S. 1 (1968).

[8] Notably, the Commonwealth concedes that Andino is entitled to relief on appeal. Specifically, the Commonwealth states that although the police lawfully stopped Andino's car, "the record does not support the conclusion that [Andino] appeared to be armed and dangerous." Commonwealth's Brief, at

It is well established that "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009). As our Supreme Court has explained:

> [I]f the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. Since the sole justification for a *Terry* search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

*Commonwealth v. Stevenson*, 744 A.2d 1261, 1264-65 (Pa. 2000) (citations and quotation marks omitted).

Instantly, Officer Davis and Officer Murphy contradicted each other on two portions of their testimony: (1) whether they smelled an odor of burnt marijuana emanating from the car during the stop; and (2) whether Andino had been handcuffed at the time Officer Davis handed him over to Officer

---

4. Additionally, the Commonwealth does not find support in the record for the trial court's conclusion that Andino made a furtive movement when Andino leaned toward the steering wheel, but, rather, would find that Andino's "hands remained in the officer's view and all times" and, thus, "the police lacked reasonable suspicion to frisk [Andino]." *Id.*

Murphy.[9] Thus, this contradicted testimony from prosecution witnesses shall not be considered. **Turner**, **supra**.

With regard to whether Officer Davis had "a reasonable suspicion, based on specific and articulable facts, that [Andino] may be armed and dangerous," **Stevenson**, **supra**, we note that Officer Davis testified that in approximately one-third of the narcotics arrests he has made on the force, he has also recovered firearms. Therefore, he acknowledged that he had a heightened concern about the possibility of a firearm being in Andino's vehicle. **Id.** at 20. Officer Davis also testified that he was concerned for his safety when, as he attempted to pat Andino down, Andino "kind of leaned over towards . . . the steering wheel." **Id.** at 11.

An officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger. **Commonwealth v. Taylor**, 771 A.2d 1261 (Pa. 2001). Here, the trial judge, as the fact finder, chose to believe Officer Davis when he testified that he was concerned for his safety. However, Judge O'Keefe ultimately concluded that the officers had probable cause to search the Malibu due to "the officer's detection of the odor of marijuana" and that once probable cause was

---

[9] **Compare** N.T. Suppression Hearing/Waiver Trial, 12/14/17, at 13 (Officer Davis testified that as Andino exited the vehicle he "believed the defendant was going to become a little hostile[, so he] handcuffed him . . . for my safety and his safety.") **with id.** at 35-36 (Q": And was he in handcuffs at that time [Officer Davis passed him off to you]. A: No.").

established "the officers possessed the requisite authority to require the driver to exit the vehicle and had a reasonable basis to conduct a protective pat[-]down for their safety." Trial Court Opinion, 8/21/18, at 5. Because Officer Murphy testified that he did not remember smelling marijuana coming from Andino's car and there are no facts to support Officer Davis's testimony that he smelled an odor of marijuana emanating from the car, we conclude that the trial court erroneously relied on this fact to conclude that there was probable cause and conduct a protective pat-down. *Commonwealth v. Trenge*, 451 A.2d 701 (Pa. Super. 1982) (collecting cases standing for proposition that odor of marijuana, without more, usually will not provide probable cause). Here, the only other fact that Officer Davis had prior to conducting his pat-down was that Andino's vehicle registration was suspended for failure to pay. This fact, alone, does not create probable cause. *Commonwealth v. Bailey*, 545 A.2d 942, 947 (Pa. Super. 1988) (to justify a search of movable vehicle, officer must have independent probable cause to believe: felony has been committed by occupants of vehicle, that it has been used in furtherance of commission of felony, or officer must have basis for believing evidence of a crime is concealed within vehicle, or that there are weapons within vehicle accessible to occupants).

Moreover, because Officer Davis had already commenced patting Andino down at the time he observed Andino lean toward the steering wheel, he cannot rely on that subsequent fact to justify the pat-down. *See Stevenson*, *supra* ("[I]f the officer has a reasonable suspicion, based on specific and

articulable facts, that the detained individual may be armed and dangerous, the officer **may then** conduct a frisk of the individual's outer garments for weapons."). Simply put, an officer's reasonable suspicion is a condition precedent to a lawful **Terry** frisk.

Now that we have taken the alleged "furtive" movement out of the equation, we are left with the following facts to support Officer Davis' justification for the pat-down: the stop occurred in a high-crime area at night and Officer Davis had a heightened concern that there may be a firearm in the Malibu where, in his experience, 33% of narcotics arrests also result in the recovery of firearms.[10] These facts do not justify a **Terry** pat-down. **See Commonwealth v. Brown**, 904 A.2d 925 (Pa. Super. 2006) (absence of flight in high crime area negates presence of reasonable suspicion and invalidates police's **Terry** stop of defendant); **see also Commonwealth v. Grahame**, 7 A.3d 810 (Pa. 2010) (where officer conducted protective search based on generalization that firearms commonly found in close proximity to illegal drugs, and where there were no facts supporting objectively reasonable belief that defendant was armed and dangerous, officer lacked reasonable

_____

[10] While we recognize that officers may draw specific, reasonable inferences from facts in light of their training and experience, here Officer Davis' concern that weapons may have been present on Andino's person or in his vehicle is predicated on the disputed testimony that there was an odor of marijuana emanating from the car. Again, this finding is not supported in the record. **Turner**, **supra**.

- 9 -

suspicion to conduct **Terry** search).[11]  Thus, under the specific facts of this case, we conclude that Officer Davis did not have a particularized, objective basis for his pat-down of Andino and any further search of the Malibu was unlawful.  **Stevenson**, **supra**.

Judgment of sentence vacated. Order denying motion to suppress reversed. Case remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judge Kunselman joins this Memorandum.

Judge Strassburger files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/17/19

---

[11] While Andino initially "t[oo]k off" after the officers pulled up behind the Malibu when it was double-parked on Cecil B. Moore Avenue, neither officer characterized the action as "flight."

- 10 -