COMMONWEALTH

v.

**William DONOVAN, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 21, 2003.

Decided July 31, 2003.

---

Karl E. Rominger, Carlisle, for appellant.

Jaime M. Keating, Carlisle, for appellee.

BEFORE: COLINS, President Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY SENIOR JUDGE FLAHERTY.

William Donovan (Donovan) appeals from an order of the Court of Common Pleas of Cumberland County (trial court) which convicted him of the summary offense of hunting over bait in violation of Section 2308(a)(8) of the Game and Wildlife Code, 34 Pa.C.S. § 2308(a)(8). We affirm.

A deputy wildlife conservation officer, Officer Lynch, testified before the trial court that on October 7, 2001, he went to an area 300 yards west of Blind Lane in Cumberland County. He observed shelled corn scattered over 130 feet along a deer trail. Twenty-five yards from the corn was a climbing tree stand. There was no one in the stand at the time.

On October 10, 2001, Officer Lynch went to the same location, where he again observed the corn along the deer path. This time he observed Donovan in the tree stand. Officer Lynch described the corn as a bright orange color. Although it was scattered, he could get a handful from any one spot. Officer Lynch testified that there were six to eight piles of corn visible from the tree stand and the nearest corn was only four feet from the tree where Donovan's stand was located.

Officer Lynch identified himself, asked Donovan to give him his archery equipment and to come down from the tree stand. Donovan complied and also produced his hunting license at Officer Lynch's request. Officer Lynch then told him that he was hunting in a baited area and showed Donovan the corn. Donovan replied that he did not know that corn was present, denied placing it there and opined that squirrels may be responsible for scattering it.

Officer Lynch then requested Donovan to return to his own vehicle and then meet Officer Lynch at his vehicle. After Donovan arrived at Officer Lynch's vehicle, Officer Lynch obtained personal information from him and then returned his bow and arrows and hunting license. A citation was later mailed to Donovan for violating 34 Pa.C.S. § 2308(a)(8) for hunting in a baited area. A district magistrate found Donovan guilty of the violation and after a de novo hearing, the trial court also found Donovan guilty of violating 34 Pa.C.S. § 2308(a)(8). This appeal followed.

Initially, Donovan argues that the trial court erred in denying his motion to suppress. Donovan filed a pre-trial motion to suppress statements made to Officer Lynch regarding the origin of the corn.

Specifically, he sought to suppress the statements that he did not know the corn was present, that he did not place it in the ground and that squirrels could be responsible for the corn. After an evidentiary hearing the trial court denied the motion and Donovan now argues before this court that the statements should have been suppressed because the encounter between himself and Officer Lynch was a custodial interrogation which required *Miranda* warnings.[1] We disagree.

 In order for *Miranda* to apply, custody and interrogation must be found. *Commonwealth v. Turner*, 772 A.2d 970, 974 (Pa.Super.2001). "Police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to become the functional equivalent of an arrest." *Turner*, 772 A.2d at 974. The test for determining whether a custodial interrogation has occurred is objective and factors a court considers are:

> the basis for the detention; its length; its location; whether the suspect was transported against his or her will; how far and why; whether restraints were used; whether the law enforcement officer showed, threatened, or used force; and the investigative methods employed to confirm or dispel suspicions.

*Turner*, 772 A.2d at 973. Here, although Donovan argues that his encounter with Officer Lynch was a custodial interrogation, we agree with the trial court that the encounter did not amount to a custodial interrogation.

 Donovan takes issue with the fact that Officer Lynch asked him to come down from the tree stand. Donovan maintains that, had Officer Lynch asked him questions while he remained in the tree stand, the necessity for *Miranda* warnings would not have been triggered. Officer Lynch's action in requesting Donovan to come down from the stand with his weapon in order to obtain information as to his suspicions is consistent with maintaining the safety of Officer Lynch and Donovan. Moreover, the encounter occurred in an open area, Donovan was not restrained or transported against his will and in fact drove his own vehicle. At no time did Officer Lynch show or threaten force. Applying the *Turner* factors to his case, the totality of the circumstances do not suggest that Donovan was subject to a custodial investigation.

Donovan nonetheless relies on *Commonwealth v. Palm*, 315 Pa.Super. 377, 462 A.2d 243 (1983). In that case, the court stated that a game protector, upon reasonable suspicion, may stop a vehicle and, upon probable cause may search the vehicle. However, the game protector, "prior to turning the inquiry from questions of an investigative nature to interrogation that is accusatory," must provide *Miranda* warnings. *Palm*, 462 A.2d at 249. Here, Donovan maintains that Officer Lynch asked questions accusatory in nature without the benefit of *Miranda*. Specifically, he points to Officer Lynch's testimony wherein he stated that "I advised him [Donovan] to come down and told him that we had a problem with him hunting over bait." (R.R. at 12.) We disagree that such a statement made by Officer Lynch was accusatory in nature. Rather, Officer Lynch was explaining that the circumstances under which Donovan were hunting were problematic. Moreover, Officer Lynch's demeanor was non-threatening inasmuch as he testified that at no time did he raise his voice or display his weapon.

Next, Donovan claims that there was insufficient evidence to convict him of vio-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

lating 34 Pa.C.S. § 2308(a)(8) which makes it unlawful to hunt in baited areas. Donovan argues that there was no evidence presented that he was aware of the bait or that he continued to hunt over the bait.

In *Commonwealth v. Sellinger*, 763 A.2d 525 (Pa.Cmwlth.2000), this court stated that the standard to be employed in a prosecution for hunting over bait is as follows:

> a violation of 34 Pa.C.S. [§ ]2308(a)(8) occurs regardless of whether the hunter intends to take advantage of the bait if he continues to hunt in an area after he knows or has reason to know that it is a baited area; even if he proceeds to hunt by walking away from the bait rather than toward it, so long as he continues to hunt.

*Sellinger*, 763 A.2d at 527. In that case, hunters were in an area containing game feeders each of which contained shelled corn and were surrounded by bear droppings. The hunters were observed to be close enough to the feeders to be aware of them. The trial court determined that the hunters knew or should have known that they were violating the statute and the act of hunting near the bait constituted a voluntary act for which they were found to be in violation of the statute.

This court affirmed the trial court and adopted its reasoning that a standard of strict liability did not apply nor did the Commonwealth have to prove that the hunter intended to violate the statute. In stating that a strict liability standard would be unjust, this court stated:

> It is possible to attract game to an area by the use of bait that is not apparent to anyone but the person who set it out. Shelled corn or salt spread in high grass or underbrush and certain commercial liquids are but two ways to do this. These are undetectable to the lawful hunter who happens to find himself in the area in which they have been set. If

we were to apply strict liability to this statute then a completely innocent hunter, exercising the utmost of good citizenship and sportsmanship might unknowingly hunt in a baited area. Such a person cannot fairly or reasonably be found guilty of unlawful hunting.

*Id.* This court stated that a violation of the statute occurs if a hunter is hunting an area he knows or has reason to know is baited.

In this case, like the factual scenario set forth by this court in *Sellinger*, wherein we refused to apply a strict liability standard because it's possible a hunter could be hunting in an area he did not know was baited, Donovan maintains that the corn in this case was scattered on the ground and there was no real evidence that he hunted while knowing the corn to be there.

■ We observe, however, that Officer Lynch plainly observed the corn and testified that although the corn was scattered he could get a handful from any one spot. This is not the type of case where the corn was hidden in tall grass or only visible to the individual who placed it there. The corn was scattered approximately 130 feet along a deer trail and Donovan was in his tree stand directly over the trail. The corn was bright orange and the closest corn was four feet from the tree. We agree with the trial court that the evidence presented evidences that Donovan knew or should have known that he was hunting in a baited area.

Finally, Donovan argues that because it is lawful for the blind or visually impaired to hunt in Pennsylvania, without evidence of Donovan's vision acuity, the Commonwealth failed to establish beyond a reasonable doubt that he saw or should have seen the corn.

When determining whether the Commonwealth has met its burden of proof, the test to be applied is whether, viewing the evidence in a light most favorable to the

Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. *Commonwealth v. George,* 705 A.2d 916, 918 (Pa.Super.1998). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *Id.*

Here, Donovan makes the argument that "in the absence of evidence that Defendant [Donovan] could see the corn from his tree stand and that his visual acuity would have permitted it, and/or that he was not color blind, and remembering the burdens as they apply to [c]riminal cases, [the trial court] should have acquitted Defendant [Donovan]." (Donovan's brief at p. 13.) We agree with the trial court, however, that there was ample evidence from which it could infer that Donovan was neither blind nor visually impaired.

Specifically, the trial court observed that during the trial he did not appear to be visually impaired. Additionally, when questioned by Officer Lynch as to the corn in the vicinity, Donovan denied having placed it there and also pointed out that he had seen squirrels carrying corn onto the trail from an adjoining field. Because the field was 200 to 300 yards away, the trial court reasoned that if Donovan could see a squirrel carrying corn from 200 to 300 yards away then he surely would have seen corn on the deer trail located only a few feet away.

In accordance with the above, the order of the trial court is affirmed.

### ORDER

Now, July 31, 2003, the order of the Court of Common Pleas of Cumberland County at No. 2002–0159, is affirmed.