**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TASJUAN DELAJIS WASHINGTON | : | |
| | : | |
| Appellant | : | No. 853 MDA 2018 |

Appeal from the Judgment of Sentence May 14, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000340-2016

BEFORE:  LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                **FILED NOVEMBER 16, 2018**

Tasjuan Delajis Washington appeals from the judgment of sentence, entered in the Court of Common Pleas of Adams County, following his conviction for driving under the influence of a controlled substance[1] and a related offense.  Washington claims that the trial court should have suppressed statements he made to police during the course of a traffic stop,

---

[1] 75 Pa.C.S. § 3802(d)(2).  Washington was also found guilty of the summary offense of "turning movements and required signals," 75 Pa.C.S. § 3334(a), for his failure to use turn signal during the incident.  Two other charges, counts 1 & 2, were withdrawn due to Washington's blood tests being deemed inadmissible under *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016) (invalidating any criminal sanction assessed for refusing to submit to blood test in absence of a warrant; U.S. Supreme Court determined police must either seek warrant or show exigent circumstances for such blood tests).  Washington was also found not guilty of driving on roadways laned for traffic because there was no testimony that Washington's crossing of the center line of traffic prior to the stop was unsafe or presentence a danger to motorists or property.

where he had not been given his **_Miranda_** warnings before making the statements. After careful review, we affirm.

The trial court aptly stated the facts underlying this case as follows:

[O]n March 23, 2018, Gettysburg Borough Officer Shannon Hilliard testified that he has undergone special training pertinent to detecting and enforcing driving under the influence laws. Specifically, Officer Hilliard completed the ARIDE seminar, which is primarily geared towards the detection of drug impairment. Officer Hilliard testified that he has made approximately 475 DUI arrests and that of these 475 DUI arrests, about 30% of them involved drug impairment.

On the evening of January 30, 2016, Officer Hilliard was working an overnight shift and was in full uniform and was operating a marked police vehicle. Around 2:00 A.M. Officer Hilliard testified that he witnessed [Washington] fail to utilize a turning signal when pulling out of a parallel parking space and the car appeared to have dark tinted windows. Officer Hilliard witnessed the driver of the vehicle participate in suspicious behavior when he turned off of Stratton Street, onto Hazel Alley, which has no main attractions other than the S[tate] C[riminal] A[lien] A[ssistance] P[rogram] building. Almost immediately thereafter, the vehicle reemerged on Stratton Street. Officer Hilliard testified that he began to follow the car and witnessed the car cross over the center line dividing traffic at least three times. Officer Hilliard testified that he did not observe anything on the roadway that would cause the Appellant to swerve to avoid hitting something.

Officer Hilliard activated his vehicle's emergency equipment after witnessing the vehicle cross over the center line for the third time. When Officer Hilliard approached the vehicle, he noticed that [Washington] was driving the vehicle and one passenger was in the car. Officer Hilliard testified that he observed that [Washington] had bloodshot and glassy eyes and detected a strong odor of burnt marijuana. Officer Hilliard obtained [Washington's] driver's license, registration, and insurance. Upon Officer Hilliard approaching the car to return the documents to [Washington], he noticed that an overpowering odor of cologne was emanating from the car. He testified that this smell was not detected when he originally approached the vehicle. At this point,

Officer Hilliard asked [Washington] to step out of the car and perform field sobriety testing.

[Washington] performed both the Romberg balance test and the one-leg stand test. During the Romberg test Officer Hilliard was looking for eyelid tremors, swaying, balance, and to see how close to thirty seconds [Washington] was able to estimate. In this case, Officer Hilliard testified that he observed eyelid tremors, swaying back and forth, and completion of the test after 23 seconds. Officer Hilliard testified that he was trained that all of these observations are indications of impairment.

During the one[-]leg stand test[,] Officer Hilliard testified [he] was looking for raising of the arms to maintain balance, if the individual is actually watching the raised foot, if the foot is parallel to the ground, if the foot is about six inches off of the ground, if the individual is swaying, and if the individual's counting is aligned with the Officer's timing. Officer Hilliard testified that he observed [Washington] swaying back and forth and his hands were raised at shoulder height to maintain balance. Officer Hilliard testified that these are indications of impairment.

Officer Hilliard testified that the one-leg stand test can be indicative of alcohol impairment and drug impairment and the Romberg balance test is one of the primary indicators of marijuana impairment.

After he made these observations[,] Officer Hilliard asked [Washington] if he had consumed marijuana within the past 12 hours. [Washington] indicated that he had. Officer Hilliard next asked [Washington] how recently. [Washington] replied that it was within the past four hours. [Washington] was not read his *Miranda* rights before these two questions were asked. At the time these two questions were asked, two additional officers were five feet away from Officer Hilliard and [Washington]. Officer Hilliard testified that to his knowledge, neither of the officers interacted with [Washington] in any way during this time. Officer Hilliard testified that at the time these questions were asked, he was standing with [Washington] in between [Washington's] vehicle and his police cruiser. [Washington] was not handcuffed at this time and he was not told that he was not free to leave, and he was not told that he was under arrest. Approximately six to eight minutes had passed from the time the stop was initiated to the time these two questions were asked.

> Officer Hilliard testified that these questions were asked to confirm his suspicions that [Washington had] used marijuana.

Trial Court Opinion, 6/25/18, at 1-3.

The trial court concluded that the stop did not evolve into a custodial interrogation warranting the administration of ***Miranda*** warnings prior to Officer Hillard asking Washington if he had been smoking marijuana. Accordingly, the court denied Washington's motion to suppress and proceeded to a bench trial, after which Washington was found guilty of the above-mentioned offenses.[2] On May 14, 2018, Washington was sentenced to 72 hours to six months of confinement in county prison and ordered to pay fines; he was immediately eligible for work release. Washington filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors

_____

[2] We remind the trial court that pursuant to Pa.R.Crim.P. 581(I):

> At the conclusion of the [suppression] hearing, the judge **shall** enter on the record a statement of the findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.

Pa.R.Crim.P. 581(I) (emphasis added). Here, the trial judge noted, at the conclusion of the suppression hearing, "time circumstances don't allow for an on-the-record recitation of findings of fact. We will prepare those later today, if necessary, but the bottom line is I reviewed the case law cited by the Commonwealth, and based on that, legal precedent would agree with the Commonwealth that this was not a custodial interrogation." N.T. Suppression Hearing/Non-Jury Trial, 3/23/18, at 28. We do not believe that the cursory on-the-record analysis performed by the trial court supplants the more detailed and thoughtful process espoused by Rule 581.

complained of on appeal. This appeal follows, in which Washington presents

one issue for our review:

> Did the lower court err in failing to suppress [Washington's] self-incriminating statements where he was stopped by police, had his documentation taken from him, was made to exit his vehicle in [the] dead of winter to perform field sobriety tests, was not told that he was free to leave, and was subjected to interrogation in the presence of three uniformed police officers, without being given **Miranda**[3] warnings?

Washington contends that no reasonable person would have believed

that he or she was free to leave at the time Officer Hilldale elicited

incriminating statements from him in the middle of a cold winter night, at 2:00

AM, on an Adams County roadway. Thus, he contends it was incumbent upon

Officer Hillard to have given him his **Miranda** rights prior to interrogating him.

In **Commonwealth v. Turner**, 772 A.2d 970 (Pa. Super. 2001), our

Court set forth the relevant standard of review for an appeal of a suppression

order:

> In an appeal from the denial of a motion to suppress, [the] Pennsylvania [S]uperior [C]ourt's role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, the court may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the factual findings of the suppression court, the reviewing court may reverse only if there is an error in the legal conclusions drawn from those factual findings. As a reviewing court, it is, therefore, not bound by the legal conclusions of the suppression court and

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

must reverse that court's determination if the conclusions are in error or the law is misapplied.

*Id.* at 972-73.

There are two requirements that must be met before **Miranda** will apply to a given situation: custody and interrogation. **Commonwealth v. Whitehead**, 629 A.2d 142 (Pa. Super. 1993). Police detentions are considered custodial, when "under a totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest." **Commonwealth v. Ellis**, 549 A.2d 1323, 1332 (Pa. Super. 1988) (citation omitted). A court uses the following factors to determine whether a detention has become so coercive as to constitute the functional equivalent of a formal arrest: (1) the basis for the detention; (2) the duration of the detention; (3) the location of the detention; (4) whether the suspect was transferred against his will, how far, and why; (5) whether restraints were used; (6) the show, threat, or use of force; and (7) the methods of investigation used to confirm or dispel an officer's suspicions. **Commonwealth v. Williams**, 941 A.2d 14, 31 (Pa. Super. 2008) (citations omitted).

Here, Washington was properly subjected to a traffic stop[4] when officer Hillard observed him fail to use a turn signal as he pulled out of a parallel

---

[4] Although not an issue on appeal, we note that if the alleged basis of a vehicular stop is to determine whether there has been compliance with the Commonwealth's Vehicle Code, it is incumbent upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which

parking space, Washington's car appeared to have heavily tinted windows, and he saw the vehicle cross over the center dividing line of the road several times. N.T. Suppression Hearing/Non-Jury Trial, 3/23/18, at 6- 9. At this point, the officer activated his emergency equipment and stopped Washington's vehicle on a public roadway. *Id.* at 10. Officer Hillard

---

would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the code. ***Commonwealth v. Spieler***, 887 A.2d 1271 (Pa. Super. 2005). However, if an officer stops a vehicle for the purpose of obtaining necessary information to enforce the provisions of the Code, the stop need only be based on reasonable suspicion that a violation of the Code has occurred. 75 Pa.C.S. § 6308(b).

Instantly, among other things, Officer Hillard stopped Washington's vehicle because he had failed to use his turn signal as he entered the lane of traffic from a parking spot. Under section 3334:

> (a) General rule. -- Upon a roadway **no person shall** turn a vehicle or move from one traffic lane to another or **enter the traffic stream from a parked position** unless and until the movement can be made with reasonable safety nor **without giving an appropriate signal in the manner provided in this section.**
>
> (b) Signals on turning and starting. -- At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S. § 3334 (emphasis added). Officer Hillard had probable cause to stop Washington because he did not need any more information to confirm that he reasonably believed Washington had violated section 3334 of the Vehicle Code by failing to use his turn signal.

approached Washington's vehicle, at which point he noticed that Washington had bloodshot, glassy eyes and detected a strong odor of burnt marijuana emanating from the open driver's side window of the vehicle. *Id.* Officer Hillard testified that the marijuana odor grew stronger when Washington spoke. *Id.* Officer Hillard retrieved Washington's license, registration and insurance information and ran them through the police data base system. The data base information indicated that Washington's license was valid and his vehicle registration active. *Id.* at 11. Officer Hillard returned to Washington's vehicle,[5] where he detected an "overpowering odor of . . . a body spray or cologne" in the vehicle that had not been present when he first approached it. *Id.* Officer Hillard then asked Washington to step out of the car to perform field sobriety tests on him. At this point, two more armed, uniformed officers arrived on the scene in their marked vehicles. The other officers stood approximately five feet away from Officer Hillard and Washington on the sidewalk. As Officer Hillard performed the tests, Officer Hillard noticed Washington have eye tremors, sway back and forth, and have trouble maintaining his balance without raising his arms to shoulder height. *Id.* at 15. After noticing these obvious signs of impairment, and without first giving him his *Miranda* rights, Officer Hillard asked Washington if he had consumed marijuana in the past twelve hours. *Id.* at 16. When Washington replied that

---

[5] The record is unclear as to whether Officer Hillard returned the documents to Washington before he asked him to exit the vehicle and performed the field sobriety tests upon him.

he had used marijuana recently, Officer Hillard asked him how recently he had used the drug. *Id.* Washington told the officer he had smoked marijuana within the past four hours. *Id.* At this point, Officer Hillard placed Washington under arrest. *Id.* at 19.

The fundamental question in this appeal is whether Washington's encounter with police, which began as an investigative detention, rose to the level of a custodial interrogation warranting *Miranda* warnings prior to the officer asking Washington any questions. Applying the *Williams* factors to determine whether Washington, based upon a reasonable person standard, would think he was in custody at that time, we note the following: (1) the officer was detaining Washington to determine whether he was under the influence of drugs; (2) the detention lasted between 6-8 minutes in total; (3) the stop occurred on a public roadway at 2:00 AM; (4) Washington was not transferred anywhere against his will; (5) no restraints were used on Washington; (6) no show, threat or use of force occurred; and (7) the officer asked for Washington's license, registration and insurance information, had him perform field sobriety tests, and asked him one initial question and one follow-up question. *Williams*, *supra*.

While the record reveals that there were two other armed, uniformed officers at the scene, standing five feet from Washington when he was questioned, Officer Hillard testified that he did not recall these officers interacting with Washington at all during the stop and there is no evidence to contradict that recollection. Here, Officer Hillard asked Washington questions

as part of his "investigative responsibilities to establish what occurred[.]" ***Proctor***, 657 A.2d 8, 13 (Pa. Super. 1995). Washington's responses to Officer Hillard's questions were voluntary; he was never told that he could not leave the scene or refuse to answer the questions. Moreover, the conditions surrounding the stop were not coercive or custodial such that they would have led a reasonable person to believe that he or she was under arrest. ***Commonwealth v. Sullivan***, 581 A.2d 956 (Pa. Super. 1990) (where defendant was not placed under arrest, forced to enter police patrol car, subjected to coercion or prolonged questioning during traffic stop, ***Miranda*** warnings not necessary where defendant spontaneously uttered "Oh, I'm drunk.").

Viewed under a totality of the circumstances, we believe that the record supports the trial court's factual findings and legal conclusion that it was not necessary for Officer Hillard to administer Washington his ***Miranda*** rights prior to posing limited, relevant questions. ***See Commonwealth v. Toanone***, 553 A.2d 998, 1003 (Pa. Super. 1989) ("police need only give ***Miranda*** warnings while detaining a suspect by the side of a public highway when the suspect is actually placed under arrest or when the questioning of the suspect is so prolonged or coercive as to approximate the atmosphere of a station house interrogation.") (citations and footnote omitted); ***see also Proctor***, ***supra*** (typically, officer may ask detainee, during routine traffic stop, moderate number of questions to determine identity and obtain information confirming or dispelling officer's suspicion; detainee is not obliged to respond and, if

detainee's answers do not provide officer with probable cause to arrest, detainee must be released). We find no error. **Turner**, ***supra***.

Judgment of sentence affirmed.

Judge Musmanno joins the Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2018

- 11 -