J-S23032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABDULLAH I. EL-AMIN | : | |
| | : | |
| Appellant | : | No. 1881 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 3, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002730-2021

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED NOVEMBER 22, 2024**

Appellant, Abdullah I. El-Amin, appeals from the judgment of sentence following his jury convictions of murder in the third degree and possessing an instrument of crime.[1] Appellant claims the trial court erred by denying suppression of his statements made in response to police questioning when initially stopped for disregarding a stop sign and then again after the decedent was brought to a hospital.

The trial court accurately summarized the evidence:

> On September 28, 2020, at approximately 8:00 AM, police observed Appellant drive his Jeep Wrangler through a stop sign in the 900 block of [North] 41st Street in the city and county of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c) and 907(a), respectively.

Philadelphia.[2] The officers effectuated a traffic stop. Appellant immediately pulled over and exited his car. Officers told Appellant to go back to the car, while Appellant told them that there was a person shot inside his car. The officers asked him what happened, and Appellant told them that he "was at 48th, 49th and Wyalusing and the person in the car circled the car and got into it frantically." Then an unknown person "came to the driver's side window, reached in, and shot the person in the passenger seat." The officer tried to gather information as to where this happened to preserve a potential crime scene. The officer indicated he asked investigatory type questions to find out where this happened, how it happened, and how Appellant ended up on the 900 block of 41st Street. The officer went over police radio to have other officers try to locate a crime scene. Appellant gave the officer a stack of information, which included a Pennsylvania license to carry a firearm. Officers asked Appellant if he had a firearm and he said no. (Notes of Testimony, "N.T." Motion to Suppress, August 22, 2022, pp. 13-15; N.T. 8/23/22, pp. 40-44).

At this point, the officers decided to leave the shooting victim in the Jeep and they directed Appellant to follow them to Presbyterian Hospital, located about a mile away. When they arrived at the hospital, officers asked Appellant to exit the car so that hospital staff could get the victim out of the car and so that the officers could get more information about where this happened because Officers received word back that a scene could not be located at 48th or 49th Street and Wyalusing Street. Officers also wanted to find out information about the shooter - they wanted to get a description of the person Appellant said did the shooting so they could try to find him. (N.T. 8/22/22 at pp. 16-17, N.T.; N.T. 8/23/22 pp. 46, 50).

Officer Chartreau asked Appellant for permission to look inside the car for ballistic evidence, since Appellant told him that the shooter reached inside the car with a firearm to shoot the victim. Appellant agreed that the officer could search the car. While looking inside the car, the officer observed an empty holster for a firearm. They did not see any ballistic evidence or a firearm. After doctors pronounced the victim deceased, police took Appellant to the

---

[2] All police interactions with Appellant were recorded on Officer Michael Chartreau's body worn camera and admitted as an exhibit.

homicide division for further questioning. (N.T. 8/22/22 pp.17-18; N.T. 8/23/22 pp. 47-48).

Once at homicide, detectives gave Appellant his **Miranda** warning and Appellant agreed to provide a statement. Homicide detectives made a video recording of this statement. Appellant admitted to shooting the victim, but claimed it was self-defense. He admitted to using a .22 caliber Thunderstruck revolver in the shooting and shooting the victim 4 times.[3] That gun was not recovered, but homicide detectives recovered surveillance video of the Jeep Appellant drove to the hospital on 47th Street while he was following the officers. That video shows the Jee[p] slow down and an item is seen thrown out of the car into a dumpster. He also later admitted to throwing the gun in the dumpster. Detectives tried to recover the firearm, but the dumpster was taken to a landfill and was unable to be located. (N.T. 8/25/2022 pp. 18, 24, 36, 40, C-45).

Appellant told detectives that he was driving around the area encompassing 52nd and Market on the early morning hours of September 28, 2020. He said he was thinking about buying himself some breakfast and noticed a woman in the area [of] 52nd and Girard/Market Streets. He turned his car around and approached the woman. She entered his car. He said he was "unsure of what I was gonna do" so he drove around, at her request. Eventually, she told him where to pull the Jeep over. He complied. He stated that Ms. Green pulled her shirt down exposing her breasts and she asked him, "What you really tryin to do?" as she touched his leg. Eventually, they agree that she would perform oral sex in exchange for twenty-five dollars. Appellant stated that as she was "finishing up," he stated he wanted to touch her private parts, and he began doing so, but she avoided his touch. He stated at that point, she tried to reach into his pants pocket, as his pants were pulled down, and he told her not to take any of his money. He stated his Thunderstruck .22 caliber gun was in the cup holder between the seats and she grabbed the gun. They "tussled" for the gun at which time he was able to obtain the gun out of her hands. He stated she punched him and he fired the gun at her. He then said he "Let off," panicked and fired three

---

[3] Detective Dominic testified that that gun shoots two bullets with one trigger pull. The resulting injury to the body would look like a "snake bite." (N.T. 8/25/2023, p. 36, 45).

more times for a total of four shots, but eight bullet wounds due to the type of gun the Thunderstruck is. (C-45).

Dr. Hannah Kastenbaum, an associate Medical Examiner for the City of Philadelphia testified about the decedent's injuries and manner and cause of death. As an expert in the field of forensic pathology, Dr. Kastenbaum described Ms. Green's injuries as eight gunshot wounds from a close range: two to the left neck, two to the upper left arm, two to the left side/flank and two to the upper left back. The last two shots proved fatal for Ms. Green, as one of those bullets went through her lung and her heart, killing her. Eight bullets were removed from Ms. Green's body and turned over to the Philadelphia Police Department. Dr. Kastenbaum testified that the cause of death was multiple gunshot wounds, and the manner of death was homicide. (N.T. 8/23/2022, pp. 123, 128, 130-131, 144, 146-147).

Trial Court Opinion, 2-5 (footnotes renumbered from the original).

The motion to suppress was heard by Honorable Diana L. Anhalt on August 22, 2022. Appellant sought to suppress the statements recorded on the officer's body camera video at the initial stop for disregarding a stop sign and at the hospital after being led there by police officers, and the empty gun holster found in his car. Appellant maintained that he was in custody at the time the officers asked him questions, and this amounted to a custodial interrogation, requiring the *Miranda* warnings.[4] In those statements he asserted a false location and shooter and denied having a gun. He did not seek to suppress his later statements admitting guilt made at the police station after being informed of, and waiving, his *Miranda* rights. The trial court denied suppression, finding that *Miranda* warnings were not required because Appellant was not in custody when he volunteered the initial statement and

_____

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 4 -

was not interrogated when he made the second. N.T. 8/2/22, 59. Trial testimony commenced August 23, 2022. The trial court instructed the jury on self-defense and imperfect self-defense. *See* N.T. 8/26/22, 33-40. The jury found Appellant guilty of murder in the third degree and possessing an instrument of crime. N.T 8/29/22, 5-6. On March 3, 2023, the court imposed consecutive terms of incarceration of 16 to 32 years on the murder conviction and one-and-one-half to three years for possessing an instrument of crime. Trial Court Opinion, 5.

Appellant filed a motion for reconsideration of sentence on March 7, 2023, and post-sentence motions on March 13, 2023, both of which were denied by operation of law on July 5, 2023. Trial Court Record, 111, 117, 123. Counsel filed a timely Notice of Appeal and leave to withdraw from representation on July 14, 2023. *Id*., 126, 128. The trial court granted counsel's motion to withdraw on July 17, 2023, and appointed new counsel for the appeal. *Id*., 134, 140. On August 31, 2023, the trial court ordered new counsel to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). *Id*., 141. Counsel filed the Rule 1925(b) Statement on September 14, 2023, alleging error in denying suppression, insufficient evidence and the jury's verdict was contrary to the weight of the evidence. *Id*. 143-144.

The single issue raised on appeal is as follows:

DID COURT BELOW ERR IN NOT SUPPRESSING APPELLANT'S STATEMENTS TO POLICE?

Appellant's Brief, 5.

Our standard of review is well-established. It is:

…limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where...the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on the appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the trial court are subject to plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress. Also, it is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Sloan*, 303 A.3d 155, 162–63 (Pa. Super. 2023).

Appellant argues that the "statements given to police officers on the scene were given without *Miranda* warnings although Appellant was clearly not free to go. Those statements should have been suppressed." Appellant's Brief, 13. Appellant's argument is simply that since he was not free to go, he was in custody, and since questions were asked of him, he was interrogated. *See id*., 13-14.

"*Miranda* warnings are required only when a suspect is in custody." *Commonwealth v. Pakacki,* 901 A.2d 983, 987 (Pa. 2006);

- 6 -

*Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023). "In order to trigger the safeguards of *Miranda,* there must be both custody and interrogation." *Commonwealth v. Heggins*, 809 A.2d 908, 914 (Pa. Super. 2002). *Accord Commonwealth v. Yandamuri*, 159 A.3d 503, 520 (Pa. 2017); *Commonwealth v. Turner*, 772 A.2d 970, 973 (Pa. Super. 2001) (*en banc*); *Commonwealth v. Harper*, 230 A.3d 1231, 1237 (Pa. Super. 2020). In evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances. *See Commonwealth v. Gaul*, 912 A.2d 252, 255 (Pa. 2006); *Commonwealth v. Williams*, 640 A.2d 1251, 1259 (Pa. 1994).

> A person is in custody for *Miranda* purposes only when he "is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Johnson*, 727 A.2d 1089, 1100 (Pa. 1999). The U.S. Supreme Court has elaborated that, in determining whether an individual was in custody, the "ultimate inquiry is ... whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994).

*Commonwealth v. Boczkowski,* 846 A.2d 75, 90 (Pa. 2004) (footnote and parallel citations omitted). "[P]olice detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest." *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999) (*en banc*).

Appellant's initial statement was made after police initiated a traffic stop on 41st Street for disregarding a stop sign. Appellant immediately exited his car upon complying with the police direction to stop. The officer told him to go back to the car, but Appellant persisted in informing the officer that a shooting victim was in his car. N.T. 8/22/22, 13. When asked by the officer what happened, Appellant said that he "was at 48th, 49th and Wyalusing and the person in the car circled the car and got into it frantically," followed by an unknown person, who "came to the driver's side window, reached in, and shot the person in the passenger seat." *Id*., 14. The officer tried to gather additional information as to where the shooting had happened to preserve the crime scene. *Id*., 14-15.

"The suppression court found that Appellant was not in custody at the time he made the initial statements to the officers on the scene. The officers asked questions of Appellant after he blurted out that he had a gunshot victim in his car." Trial Court Opinion, 6. We agree with the suppression court. "The usual traffic stop constitutes an investigative rather than a custodial detention, unless, under the totality of the circumstances, the conditions and duration of the detention become the functional equivalent of arrest." *Id*. at 202. *See generally Pennsylvania v. Bruder*, 488 U.S. 9 (1988) (explaining that a traffic stop does not constitute custody for purposes of *Miranda*). "Since an ordinary traffic stop is typically brief in duration and occurs in public view, such a stop is not custodial for *Miranda* purposes." *Mannion*, 725 A.2d at 202. Thus, "police need only give *Miranda* warnings while detaining a suspect

by the side of a public highway when the suspect [has] actually [been] placed under arrest or when the questioning of the suspect is so prolonged or coercive as to approximate the atmosphere of a station house interrogation." *Commonwealth v. Toanone*, 553 A.2d 998, 1003 (Pa. Super. 1989). We discern no special circumstances, and Appellant asserts none, that would convert the investigatory detention to custodial. Therefore, *Miranda* warnings were not required.

Turning to the second set of statements, which were made at the entrance to the hospital after Appellant brought the victim to emergency care. The officer had Appellant step out of his car to allow medical personnel access to the victim. N.T. 8/22/22, 16-17. In addition, the officer needed to question Appellant about the alleged crime scene since responding patrol officers had found no indication of a shooting where Appellant had said it happened. *Id*., 16-18. Additional officers were present at the hospital and were helping hold Appellant at the scene (and escorting him to the bathroom). *Id*., 20-21, 33. The officer obtained Appellant's consent to look in his car to see if any ballistics evidence could be located consistent with the events Appellant had reported. *Id*. 18-19. There were no fired cartridge casings in the car, but there was an empty holster for a firearm. *Id*., 19. The officer asked Appellant to describe the location of the shooting and events again. *Id*., 17, 35-36.

The factors a court uses to determine whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was

transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. *Mannion*, 725 A.2d at 200. *See also Commonwealth v. Williams*, 650 A.2d 420, 427 (Pa. 1994) (setting out the factors to determine "whether a person is in custody for *Miranda* purposes"); *Commonwealth v. Gonzalez*, 979 A.2d 879, 888 (Pa. Super. 2009) (similar); *In re V.H.*, 788 A.2d 976, 980 (Pa. Super. 2001) (similar). "A reviewing court is to consider the particular facts of each case in order to determine whether a detention is custodial." *Mannion*, 725 A.2d. at 201.

Appellant was detained for an additional period of time, in a public area, but not a public street, surrounded by additional officers that had responded to the report, and removed from his own car at police direction. Because this detention was well beyond the scope of the initial traffic stop, we assume that Appellant was in custody for *Miranda* purposes. The question then is whether he was subjected to interrogation.

"Interrogation" is defined as "questioning initiated by law enforcement officials." *Miranda*, 384 U.S. at 444. *Miranda* safeguards were extended to the "functional equivalent" of express questioning, that is, "whenever a person in custody is subjected to express questioning or" to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S.

- 10 -

291, 300-01 (1984). **See also Mannion**, 725 A.2d. at 200 ("Interrogation is police conduct calculated to, expected to, or likely to evoke admission") (internal quotation marks omitted).

The suppression court found that the questions asked by the officer "at the hospital were not meant to elicit an inculpatory response. Appellant was asked to provide information about a crime, the 'who, what and where.'" Trial Court Opinion, 7. The purpose of the questions was "to get information to find out where [the shooting] happened, and how it happened to get information about a possible suspect and find a crime scene and/or ballistic evidence." **Id**. "The officers did not have any suspects when they questioned Appellant, and their questions were not reasonably likely to elicit an incriminating response from Appellant." **Id**. We agree with the suppression court.

The suppression court relied primarily on **Commonwealth v. Umstead**, 916 A.2d 1146 (Pa. Super. 2007), to rule that Appellant was not subject to interrogation. In **Umstead**, prison officials were investigating an assault and questioning each inmate from the prison dormitory individually if they had any information or could tell what happened. **Id**. at 1148. When Umstead was asked "about the incident, [he] announced, 'It was me. I did it.'" **Id**. This Court held that Umstead was not subjected to interrogation because he "was not a suspect when the questioning occurred, nor was he asked to disclose facts linking himself to the attack." **Id**. at 1152. The same is true here. Appellant was not a suspect but presumed to be a witness to a shooting that he stated occurred in his car some 40 minutes prior but for which

he had seemingly not provided a correct location. The questions asked by the officer were general questions to establish what Appellant knew about the incident and the location. The "police conduct was not calculated to, or likely to evoke admissions," and, therefore, **Miranda** warnings were not required. **Id**. (quoting **Mannion**).[5] Indeed, Appellant did not incriminate himself at that time. The incriminating statements were made later to homicide detectives after he was informed of his **Miranda** rights.

We find that the suppression court properly applied precedent and ruled that Appellant was not subjected to interrogation. Appellant does not contest that **Umstead** is applicable here or that it supports the suppression court's ruling. Rather, he argues he was in custody, which we have assumed, for the purposes of this appeal, was the situation during the second statement. He

---

[5] This Court in **Umstead** distinguished both **Commonwealth v. DeJesus**, 787 A.2d 394 (Pa. 2001), and **Commonwealth v. Turner**, 772 A.2d 970 (Pa. Super. 2001) (*en banc*). In **DeJesus**, the detective told DeJesus that "authorities had procured witness statements implicating the defendant in two shootings" and "repeatedly mentioned the charges and told the defendant what the witnesses had said in their respective statements." **Umstead**, 916 A.2d at 1150. Such conduct was ruled "reasonably likely to evoke an effort on" the part of DeJesus to defend himself. **Id**. (quoting **Dejesus**, 787 A.2d at 403). In **Turner**, police responded to the scene of an accident and found Turner leaning on the car that had hit a parked car and who exhibited signs of intoxication. **Id**. He was then asked if he had taken any narcotics, and said he had. **Id.** This Court *en banc* ruled that "[a]s a trained officer who observed [the defendant's] physical condition, [the supervisor] should have known that [the defendant's] response might yield an incriminating statement that would lead to [his] arrest for driving under the influence." **Id**. Here, as in **Umstead** but in contrast to **DeJesus** and **Turner**, the officer's conduct was consistent with seeking basic information about a crime that had been committed, not incriminating statements.

offers no argument to the suppression court's ruling that the officer's general questions were not reasonably likely to elicit an incriminating response.

However, Appellant does contend that, assuming the officer subjected him to custodial interrogation, his subsequent incriminatory statements to detectives should be suppressed. Appellant's Brief, 11. This argument is mistaken for at least two reasons. First, we have not found a *Miranda* violation. Second, Appellant explicitly declined before the suppression court to seek suppression of his Mirandized statements to detectives. N.T. 8/22/22, 5-6 (declining to seek suppression of Mirandized statements). *See also id*., 51-52 (forwarding legal argument only on the first two non-Mirandized statements). Accordingly, this claim was waived before the lower court and may not be raised for the first time on appellate review. Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"). This rule of waiver extends to a claim based on the Fifth Amendment privilege against self-incrimination where the argument was not raised before the suppression court. *Commonwealth v. Malloy*, 856 A.2d 767, 778 (Pa. 2004).

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/22/2024